UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FEDERAL INSURANCE COMPANY

        Plaintiff,

  v.

ALBERTSON'S INC. AND AMERICAN STORES COMPANY,

        Defendants.

        /

No. C 06-04000 MHP

**MEMORANDUM & ORDER**
**Re: Motion for Reconsideration**

On June 23, 2006 plaintiff Federal Insurance Company ("Federal") filed this complaint against defendants Albertson's Inc. and American Stores Company ("ASC"), seeking contractual indemnification and equitable subrogation in connection with an agreement between the defendants and plaintiff's insured. The parties subsequently stipulated to the dismissal of Federal's cause of action for equitable subrogation. Now before the court is defendant's motion for reconsideration of this court's order of partial summary judgment in favor of Federal. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND[1]

Plaintiff Federal is an Indiana corporation and has its principal place of business in New Jersey. Defendant ASC is a Delaware corporation with its principal place of business in Utah. Defendant Albertson, Inc. is a Delaware corporation and has its principal place of business in Idaho. Albertson's is the successor in interest to defendant ASC, which it acquired subsequent to the events in this case. The dispute in this case involves the interpretation of a Dairy Services Facilitation Agreement ("Agreement" or "FA") between Federal's insured, Dean Foods Company ("Dean" or "Dean Foods") and ASC.

I.      The Sale of the Dairy and Facilitation Agreement

Dean Foods and ASC entered into the Agreement on January 30, 1998, whereby Dean Foods acquired from ASC certain dairy assets, including the San Leandro dairy processing plant ("the Dairy") involved in the present dispute. The sale closed on March 1, 1998 ("Closing Date"). At issue in the instant action are several provisions of the Agreement addressing ASC's obligations to indemnify Dean Foods for certain employment-related liabilities.

In section 3.5 of the Agreement, ASC provides certain representations and warrantees regarding employment matters:

> c.    Except as set forth on Schedule 3.5 attached hereto, there is no unfair labor practice, charge or complaint pending or, to the best of ASC's knowledge, threatened against or otherwise affecting ASC or its Affiliates with respect to the Employees.
>
> d.    Except as set forth on Schedule 3.5, there is no labor strike, slowdown, work stoppage, dispute, lockout or other material labor controversy in effect, or to the best of ASC's knowledge, threatened against ASC or its Affiliates with respect to the Employees.
>
> e.    Except as set forth on Schedule 3.5, ASC has received no notice of its or its Affiliates material violation of any law, regulation or order relating to the employment of the Employees.

Facilitation Agreement, Joint App, Exh. B. at 10. Section 8.1 requires ASC to indemnify Dean under certain circumstances including those associated with

    a.    any breach of any representation or warranty, or any breach of any covenant or obligation . . . .

    b.    the use, ownership, and possession of the Assets, occupancy of the Facilities, excepted as provided in Sections 5.1 and 5.2, employment of Employees prior to the Closing Date . . . .

Id. at 23. Two other provisions relevant to the instant dispute include section 10.2 ("Survival of Representations and Warranties") and section 5.1d(v) concerning the assumption of certain responsibilities related to employees' claims.  The survival clause limits ASC's obligations for breach of representations and warranties to one year from the Closing Date.

Section 10.2 Survival of Representations and Warranties

Any and all representations and warranties set forth herein or in any Schedule or Exhibit (including but not limited to any such representations, warranties or statements made in or in connection with any amendment) shall constitute representations and warranties under this Agreement.  All representations and warranties made under this Agreement shall be made or deemed to be made at and as of the date hereof and as of the Closing Date. Unless otherwise provided herein, all representations and warranties made or deemed to be made under this Agreement shall survive the Closing Date for a period of one (1) year, regardless of any investigations or inquiries made by any part, and shall not be waived by the Closing or by operation of law.

Id. at 27-28.  The agreement contains a further provision relating to Dean Foods' responsibilities for employee's claims.  Section 5.1(d) (Dean Employee Liabilities) states that "Dean shall be responsible for any benefits for, and claims arising after the Closing Date on behalf of, any Transferred Employee in accordance with the plans, programs or policies of Dean, if any, applicable to such Transferred Employees after the Closing Date."  Id. at 16.

    Under section 5.1a of the Agreement, Dean agreed to employ all of the existing Dairy employees as of the closing date of the Agreement.  Id. at 15.  As a result, Dairy employees March J. Williams, Lamarre Rouse, Duray Carr, Donyale Harvey, Lamott Gatson, and Juan Avila ("Underlying Plaintiffs[2]") became employees of Dean as of the closing date of the Agreement.

II.    <u>The Underlying Suit</u>

    In May 2001 the aforementioned employees filed administrative complaints against Dean Foods, alleging racial discrimination and harassment under California law.  On July 13, 2002, the Underlying Plaintiffs filed suit in Alameda County Superior Court against Dean Foods as well as

3

1  certain of its employees ("Underlying Action").  The Underlying Plaintiffs are all African-American
2  or Mexican-American men who had been employed at the Dairy since the early to mid 1990s.  Their
3  complaint alleged racially discriminatory and harassing conduct at the Dairy since 1990.  The
4  alleged conduct included ethnic slurs, name calling, administering discipline in a discriminatory
5  manner, racially based violence, and the use of threatening symbols including "KKK" graffiti, a
6  swastika, and bullet casings at the Diary.  In their complaint and in their deposition testimony, the
7  Underlying Plaintiffs provided evidence of the harassing and discriminatory conduct from 1990 to
8  2000.

III.  Procedural History

The Underlying Plaintiffs filed suit against Dean but not against ASC.  Federal defended Dean in the Underlying Action pursuant to Dean's insurance policy.  Dean provided ASC notice of the Underlying Action and Dean's claim for indemnity under the Agreement on two occasions in February 2002.  On April 25, 2002 ASC informed Dean that it would not defend Dean or indemnify it in the Underlying Action.  On June 20, 2002 ASC and Dean entered into a Joint Defense Agreement for the purposes of defending the lawsuit.  Joint App. Exh. E.

In February 2003 Federal and Dean entered into a Settlement Agreement and Release in which Dean assigned its rights to indemnification under the FA to Federal.  On February 14, 2003 Federal and Dean reached a settlement with the Underlying Plaintiffs for a sum of $3,300,000. Albertson's and ASC did not contribute to the settlement.  Federal brought suit in this court on June 28, 2006 seeking contractual indemnification and equitable subrogation under the Agreement.  The parties subsequently agreed to dismiss the equitable subrogation claim.

On March 5, 2007 the court heard the parties' motions for summary judgment and then issued an order granting partial summary judgment to Federal and denying ASC's motion for summary judgment.  In doing so, the court rejected ASC's contention that any claims against it in the Underlying Action were time-barred because those claims may have survived under the doctrine of continuing violations and, to a lesser extent, in the form of successor liability.  The court concluded that Federal had reasonably settled with the Underlying Plaintiffs for claims of unlawful

4

discrimination that occurred during ASC's ownership of the Dairy. The court also determined that Federal's settlement with the Underlying Plaintiffs was covered by the indemnification provision of the Agreement, and, therefore, that ASC must indemnify Federal.

On May 29, 2007 the United States Supreme Court issued an opinion in <u>Ledbetter v. Goodyear Tire & Rubber Co., Inc.</u>, 550 U.S. at —, 127 S.Ct. 2162 (2007). <u>Ledbetter</u> construed narrowly the statute of limitations for filing an EEOC charge based on discrete discriminatory acts, in particular pay decisions. In light of <u>Ledbetter</u>, ASC sought leave to file a motion for reconsideration of this court's order of partial summary judgment. The court granted the requested leave and asked the parties to address whether <u>Ledbetter</u> applied to contexts outside discriminatory pay decisions. The court has considered the parties' arguments carefully and denies the motion for reconsideration for the following reasons.

DISCUSSION

In its previous order, the court's task was to evaluate whether Federal, acting on behalf of its insured Dean, reasonably settled the Underlying Action for claims during ASC's ownership of the Dairy. For that purpose, the court engaged in a two-step inquiry: first, were the Underlying Plaintiffs' claims against ASC time-barred; and second, did Federal reasonably settle the claims against ASC? The court analyzed ASC's liability under the continuing violations doctrine in accordance with <u>Richards v. CH2M Hill</u>, 26 Cal. 4th 798, 812 (2001) and <u>Morgan v. Regents of Univ. of Cal.</u>, 88 Cal. App. 4th 52, 64 (2000). In doing so, the court rejected ASC's reading of <u>Morgan</u> to require that at least one act of discriminatory conduct occur within the statute of limitations in order for ASC to be liable under the continuing violations theory. The court also observed that there was evidence in the record sufficient to establish that the discriminatory conduct occurred within the statute of limitations. After analyzing the four factors set out in <u>Richards</u>, the court concluded that application of the continuing violations doctrine was appropriate and, therefore, that the Underlying Plaintiffs' claims against Alberton's were not time-barred. The present motion asks the court to reconsider its previous ruling in light of <u>Ledbetter</u>.

The motion is not well taken. First of all, the underlying action in this case was brought and litigated in state court under California law. There were no federal claims. Thus, California law was the law that this court considered and is the law that must be applied in this order. California has a well-developed body of law dealing with "continuing violations" as articulated in Richards and Morgan. The court in Morgan did discuss the Ninth Circuit's opinion in Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir. 1982), in aiding its explication of the continuing violations doctrine. However, it is clearly California law that applies to this court's analysis. And, this court finds no California cases adopting Ledbetter.[3] Nonetheless, the court disposes of the notion that the facts in the underlying case would come under the penumbra of Ledbetter.

The Supreme Court's opinion in Ledbetter did not address directly the equitable doctrine of continuing violations. Rather, the Ledbetter court considered whether a plaintiff's claim for employment discrimination under Title VII was time-barred when the discrete acts of pay discrimination occurred outside the limitations but had an effect during the limitations period. The court's opinion specifically distinguished Ledbetter's claims for discrete acts of pay discrimination from hostile work environment claims:

> Contrary to the dissent's assertion . . . what Ledbetter alleged was not a single wrong consisting of a succession of acts. Instead, she alleged a series of discrete discriminatory acts, see [citation to briefs] (arguing that payment of each paycheck constituted a separate violation of Title VII), each of which *was* independently identifiable and actionable, and [National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)] is perfectly clear that when an employee alleges "serial violations," *i.e.,* a series of actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged violation. 536 U.S. at 113.

Ledbetter, 127 S.Ct. at 2175. Thus, Ledbetter, by its own terms, dealt with discrete acts of discrimination. In doing so, the Court recognized the continuing vitality of Morgan, which acknowledged, for the purposes of the statute of limitations, a dichotomy between claims for discrete acts of discrimination and hostile work environment claims. Id.; Morgan, 536 U.S. at 109. Ledbetter merely clarified that pay discrimination, in a specific context, fell into the former category.

By contrast, Morgan did directly address the equitable doctrine of continuing violations and reversed the Ninth Circuit's application of the continuing violations doctrine to discrete acts of

6

1    discrimination which occurred outside of the limitations period. 536 U.S. at 114.  The analysis of the
2    continuing violations doctrine, however, did not end there. The Court emphasized that "hostile
3    environment claims are different in kind from discrete acts." Id. at 115.  "Thus, [w]hen the
4    workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently
5    severe or pervasive to alter the conditions of the victim's employment and create an abusive working
6    environment, Title VII is violated." Id. at 116 (quotations and citation omitted).  The Court went on
7    to conclude that the "[a] charge alleging a hostile work environment claim, however, will not be
8    time barred so long as all acts which constitute the claim are part of the same unlawful employment
9    practice and at least one act falls within the time period." Id. at 122.

       Turning now to the instant motion, the Complaint in the Underlying Action set forth a number of allegations of racial discrimination.  For instance, the first claim for relief was for harassment on the basis of race in violation of the California Fair Employment and Housing Act, California Government Code sections 12900 et seq. See Compl., Exh. D, at 30.  The Underlying Complaint then describes various allegations of racial harassment including use of slurs and racial jokes in the workplace, which the Underlying Plaintiffs alleged "has been pervasive in Dean Foods' work place at all times since at least 1989." Id. at 30–31.  A review of the Underlying Complaint indicates that almost all of the claims for relief contain allegations of discriminatory conduct and awareness by the management. See, e.g., Id. at 38–40 (Fourth Claim for Relief, Failure to Prevent Discrimination and Harassment on the basis of Race).  These allegations would likely have supported a hostile work environment theory. Ledbetter's analysis,  if even applicable under California law, would not apply to these claims.  Therefore, the court's conclusion in its previous order was correct, namely that the statute of limitations does not bar the Underlying Plaintiffs' claims.

       Furthermore, the ultimate inquiry for the purposes of the action presently before the court is whether Federal and Dean reasonably settled with the Underlying Plaintiffs for discriminatory conduct that occurred during ASC's ownership of the Dairy.  Even if Ledbetter were to apply to the statute of limitations in the Underlying Action, Federal and Dean could not have reasonably foreseen

7

this development at the time of settlement in February 2003.  More significantly, however, California courts have not adopted or applied <u>Ledbetter</u> to cases arising under state law.  Thus, it may well be that even on facts similar to those in <u>Ledbetter</u> the California courts would rule differently.

<u>CONCLUSION</u>

    Based on the foregoing,  the motion for reconsideration is DENIED.

    IT IS SO ORDERED.

Dated: September 13, 2007

                            MARILYN HALL PATEL
                            District Judge
                            United States District Court
                            Northern District of California

ENDNOTES

1. All facts cited herein are taken from the complaint ("Complaint") or the Joint Statement of Undisputed Facts ("UF") unless otherwise noted.

2. One of the plaintiffs in the Underlying Action, Frank E. Martin III, was never employed by ASC.

3. This court notes that while California courts generally apply United States Supreme Court interpretations of analogous provisions of federal employment laws to California employment statutes, Reno v. Baird, 18 Cal.4th 640, 647 (1998), there is no authority as of this date that California courts will adopt this rather cramped interpretation of pay discrimination, given the sharp dissent of four members of the Court. However, as noted above this order discusses the application of Ledbetter to the facts of this case.