UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FEDERAL INSURANCE COMPANY

        Plaintiff,

  v.

ALBERTSON'S INC. and AMERICAN STORES COMPANY,

        Defendants.

No. C 06-04000 MHP

**MEMORANDUM & ORDER**
**Re: Amended Judgment**

On November 27, 2007 this court issued a Memorandum and Order regarding allocation in the above captioned case. The order memorialized the final judgment in this case. The parties have moved under Federal Rules of Civil Procedure 52(b) and 59(e) to correct the errors of law and fact committed by the court. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

DISCUSSION

I    <u>Settlement Amount</u>

Federal paid $3.3 million to settle the underlying case. Of that, $375,000 was paid to secure the resignation of the underlying plaintiffs. Albertson's is not responsible for that amount. This leaves $2,925,000 as the settlement amount with respect to the discrimination claims brought by the seven named plaintiffs.

Two of the seven named plaintiffs—Martin and Avila—never complained about discrimination during Albertson's tenure. Martin was never employed by Albertson's and

complained of discrimination only during Dean's tenure. Avila, though he was employed by Albertson's, did not complain of any discrimination until January 2001, well past Dean's purchase of the dairy in March 1998. Thus, Martin and Avila are effectively indistinguishable in this respect—both accuse only Dean of discrimination. Thus, this court affirms its earlier holding that Albertson's is not liable for indemnification related to Martin and Avila. This court also adopts the earlier order's proportional approach, which reduced $2,925,000 by two-seventh's to account for Martin and Avila. See Docket No. 175 at 7–8. Therefore, the rest, or five-seventh's of $2,925,000, which equals $2,089,285.71, is to be distributed between Albertson's and Dean.

The allocation formula is described in great detail in the court's earlier order. Specifically:

> This court has determined that the allocation of the settlement sum and defense costs between Federal Insurance and Albertson's should be performed in the following manner: (1) determine the beginning of the hostile work environment for each of the Underlying Plaintiffs; (2) total the number of months each of the Underlying Plaintiffs worked in the hostile work environment; (3) determine how many of the total months worked in the hostile environment were worked for ASC and how many for Dean; (4) develop a relative percentage for each; and (5) apply that percentage to the total amount of the Underlying Settlement sum still to be allocated. Once derived, this same formula will be used to determine Albertson's liability for defense costs.

Id. at 5. The third prong of this standard implicitly assumes that the relative percentage is to be derived for plaintiffs that suffered discrimination at the hands of both Albertson's and Dean. This is further buttressed by the fifth prong, which specifically applies the percentage only to the amount that is still left to be allocated.

Federal correctly asserts that the court's calculation in its prior order—264 months of discrimination under Albertson's and 331 months under Dean—was incorrectly computed. Specifically, the court made two errors. First, it neglected to stop plaintiff Williams' discrimination clock when he was terminated. Since Williams was terminated in July 2000, he only suffered 29 months of discrimination at the hands of Dean, as opposed to 31 the court had initially calculated. Second, the court incorrectly accounted for 60 months of discrimination by Dean on account of Avila. As described above, Avila is not subject to this proportionality calculation as all of his harm was suffered under Dean's watch. In sum, the number of months of discrimination under Dean was overstated by 62 months.

2

To minimize error, the court now discusses the five named plaintiffs individually in order to ascertain the proportion of the $2,089,285.71 that Albertson's must indemnify:

1. Plaintiff Carr first complained of discrimination in 1990. In the absence of exact dates, the court begins its calculations from the middle of the year. Calculating from July 1, 1990 through the end of February 1998 (the date of the sale) yields 92 months under Albertson's employ. The underlying suit was settled in February 2003. Calculating from March 1, 1998 through the end of February 2003 yields 60 months under Dean's employ.

2. Plaintiff Williams first complained of discrimination in 1992. In the absence of exact dates, the court begins its calculations from the middle of the year. Calculating from July 1, 1992 through the end of February 1998 (the date of the sale) yields 68 months under Albertson's employ. Williams was terminated by Dean in July 2000. Calculating from March 1, 1998 through the end of July 2000 yields 29 months under Dean's employ.

3. Plaintiff Harvey first complained of discrimination in 1994 in the underlying complaint. However, in his deposition, Harvey stated that he heard his foreman refer to African American employees as "colored people" as early as 1993. Harvey Dep. at 143:5–144:10.[1] In the absence of exact dates, the court begins its calculations from the middle of the year. Calculating from July 1, 1993 through end of February 1998 (the date of the sale) yields 56 months under Albertson's employ. The underlying suit was settled in February 2003. Calculating from March 1, 1998 through the end of February 2003 yields 60 months under Dean's employ.

4. Plaintiff Gatson first complained of discrimination in 1995. In the absence of exact dates, the court begins its calculations from the middle of the year. Calculating from July 1, 1995 through end of February 1998 (the date of the sale) yields 32 months under Albertson's employ. The underlying suit was settled in February 2003. Calculating from March 1, 1998 through the end of February 2003 yields 60 months under Dean's employ.

5. Plaintiff Rouse first complained of discrimination in November 1996. Calculating from November 1, 1996 through end of February 1998 (the date of the sale) yields 16 months under Albertson's employ. The underlying suit was settled in February 2003. Calculating from March 1,

1998 through the end of February 2003 yields 60 months under Dean's employ.

Thus, with respect to these plaintiffs, the above calculations yield 264 months (92 + 68 + 56 + 32 + 16) of discrimination under Albertson's employ and 269 months (60 + 29 + 60 + 60 + 60) of discrimination under Dean's employ. The total number of months of discrimination is therefore 264 plus 269, which equals 533 months. Alberston's share of the settlement amount is therefore: $2,089,285.71 * (264/533) = $1,034,843.20.

II.    Attorneys Fees

Total defense costs were $801,959. Federal voluntarily agreed to deduct $148,037 from this sum for the representation of named supervisory defendant Smatsky who was never employed by Albertson's. Costs associated with the defense of other employees that only worked during Dean's tenure and severable costs associated with Martin totaled $50,766, leaving $603,156 ($801,959 minus $148,037 minus $50,766) to be allocated.

Albertson's is obviously not liable for the severable defense costs associated with defendants that were never employed by Albertson's. Thus, all costs associated with Smatsky's defense and that of other defendants that were Dean employees only are wholly attributable to Dean. Furthermore, this court holds that Albertson's is not liable for severable defense costs associated with plaintiffs that were never discriminated against under its watch. For instance, Albertson's is not liable for costs associated with taking Martin's deposition. Similarly, since Albertson's is not responsible for discriminating against underlying plaintiff Avila, severable costs associated with the defense of Avila's claims (e.g., taking his deposition) ought to have been excluded as well. Albertson's, however, has not presented any evidence to this end and any arguments it may now present are considered waived.

Thus, the non-severable costs associated with defending the suit against claims made by all seven plaintiffs as a whole, including Avila and Martin, was $603,156. Federal admits that these defense costs are non-severable and the court agrees. As stated above, Avila and Martin—who make up two of the seven plaintiffs—never complained of discrimination during Albertson's tenure.

Thus, using the proportional system of allocation the court used above, Albertson's is not at all liable for two-seventh's of the non-severable defense costs. Using the same formula as above, the remaining five-seventh's of these non-severable defense costs, namely $603,156 * (5/7), which equals $430,825.71, are to be allocated. Albertson's share is thus $430,825.71 * (264/533) = $213,392.10.

III. Interest

Interest is to be calculated on the settlement amount only. Interest has accrued on $1,034,843.21 from March 14, 2005 through November 27, 2007 at the rate of 10% per year. The time elapsed is two years and two hundred fifty-eight days, or 2 + (258/365), which is approximately 2.70685 years. Thus, the interest amount is 10% * $1,034,843.21 * 2.70685 = $280,116.46.

CONCLUSION

The order corrects a mathematical error made in this court's November 27, 2007 order. Specifically, the correct multiplier for indemnification is 264/533, not 264/595. The change in multiplier affects the amount of liability. Defendant Albertson's is thus ordered to indemnify plaintiff Federal $1,034,843.21 for the underlying settlement, $280,116.46 for prejudgment interest on that amount and $213,392.10 for defense costs of the underlying action. Therefore, the total amount of indemnification owed by Albertson's to Federal equals $1,528,351.77.

IT IS SO ORDERED.

Dated: February 8, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. In line with its November 27, 2007 order, the court relied upon the more accurate deposition testimony in the rare instances it was available.